

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| VS. | § | CASE NO. 1:08-CR-164(7) |
| | § § § | |
| PERLA CELINA MONTALVO | § | |

## FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA BEFORE THE UNITED STATES MAGISTRATE JUDGE

By order of the District Court, this matter was referred to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrate judges have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3). *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On April 15, 2010, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the defendant, Perla Celina Montalvo, on **Count One** of the

charging **Information**[1] filed in this cause. Count One of the Information charges that on or about October 1, 2006, and continuing thereafter until on or about December 9, 2008, in the Eastern District of Texas and elsewhere, Perla Celina Montalvo, defendant herein, did intentionally and knowingly conspire, combine, confederate and agree together with others known and unknown to the Grand Jury, to possess with intent to distribute 500 grams or more but less than 5 kilograms or more of a Schedule II controlled substance, namely, a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Defendant, Perla Celina Montalvo, entered a plea of guilty to Count One of the Information into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a. That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b. That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

c. That Defendant is fully competent and capable of entering an informed plea, that

---

[1] The Defendant executed a waiver of indictment which the Court addressed at the guilty plea hearing, and which was filed in the record.

Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea. Upon addressing the Defendant personally in open court, the Court determines that Defendant plea is voluntary and did not result from force, threats or promises. *See* FED. R. CRIM. P. 11(b)(2).

      d.      That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that her conduct falls within the definition of the crimes charged under 21 U.S.C. § 841(a)(1) and 846.

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the government presented the following evidence. *See Factual Basis and Stipulation.* In support, the Government would prove that Defendant, Perla Celina Montalvo is one and the same person charged in the Information and that the events described in the Information occurred in the Eastern District of Texas and elsewhere. The Government would also have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in the Information through the testimony of witnesses, including expert witnesses, and admissible exhibits. Specifically, the Government would prove the following stipulated facts through the following evidence:

In the beginning of 2007, Jefferson County Sheriff's deputies and agents with the Drug Enforcement Adminstration (DEA) began an investigation into the drug trafficking activities of Thomas Bates. Their investigation revealed that on or about October 1, 2006, co-conspirators Jose Salinas, who resided in Houston, Texas, and Thomas Bates and others began trafficking

3

methamphetamine and other narcotics from Houston, Texas to Beaumont, Texas, which is within the Eastern District of Texas, for distribution.

As part of this investigation, a Confidential Source (CS) working on behalf of the Jefferson County Sheriff's deputies and DEA, negotiated and purchased methamphetamine from Thomas Bates on March 6, 2007, April 17, 2007, June 1, 2007 and November 6, 2007. These substances delivered to the CS from Bates were all confirmed by Jefferson County Regional Crime Lab analysts and DEA South Central Lab analysts to be methamphetamine, which is a Schedule II controlled substance, in the amounts of 13.8 grams, 13.35 grams, 27.51 grams and 23.8 grams. Additionally, Bates negotiated another delivery of methamphetamine with the CS on November 8, 2007 at a residence where co-conspirator, Ashley Okun stayed. Bates then directed Okun to make the delivery to the CS on that date. The methamphetamine delivered by Okun was determined by an analyst with the DEA South Central Lab to be 55 grams of methamphetamine with a purity level of 28.8% for a total of 15.8 grams of actual methamphetamine.

DEA agents learned that as part of this conspiracy, additional quantities of methamphetamine and cocaine were also distributed by Jose Salinas to co-conspirators, Victor Schroeder and Gabriel Cruz, III in the Beaumont, Texas area. This information was confirmed by recorded telephone calls between a CS and Schroeder on January 10, 2008 and January 12, 2008. During these calls Schroeder admitted that he was aware that Salinas was incarcerated and that he had conducted numerous narcotics transactions with Jose Salinas and that the cocaine and methamphetamine that he received from Salinas was distributed in the Eastern District of Texas. During one of these calls, Schroeder requested the CS to pick up additional quantities of cocaine

from Perla Montalvo and when the CS refused, Schroeder advised that he utilized co-conspirator Evelyn Thibodeaux to drive to Houston to pick up cocaine and methamphetamine from Perla Montalvo.

DEA agents also confirmed the involvement of Cruz by recorded telephone calls between the CS and Cruz on January 10, 2008 and five calls on January 22, 2008. Additionally, on January 22, 2008, the CS, at the direction of DEA agents, met with Cruz so that Cruz could provide the CS with $3000 that Cruz owed Salinas (son) for prior narcotics purchases. Cruz directed the CS to deliver this money to Perla Montalvo, as payment for his drug debt to Jose Salinas (son).

DEA agents then coordinated the delivery of the money provided by Cruz to the CS to Perla Montalvo. The CS, at the direction of DEA agents, then traveled to Houston, Texas and met with Perla Montalvo on January 23, 2008 and delivered money owed to Salina (son) for previous drug transactions.

After DEA agents learned that Jose Salinas became incarcerated in the Harris County (Texas) jail on or about January 8, 2008, the agents then obtained 17 recorded telephone conversations from inmate Jose Salinas at the Harris County jail to the cell phone number of Salinas' girlfriend and co-conspirator, Perla Montalvo. These phone conversations revealed that Salinas continued his narcotics trafficking from the jail and that he was specifically directing his father, Jose Salinas, Sr., his girlfriend, Perla Montalvo, and co-conspirator, Noe Santos, on how to continue the distribution of narcotics and the pick up of money from Thomas Bates, Victor Schroeder and Gabriel Cruz. Salinas was released from the Harris County jail later that month.

After his release from jail, Salinas continued his drug transactions and arranged a meeting with the CS on October 22, 2008 at a restaurant in Houston, Texas to deliver additional quantities of methamphetamine. During this meeting, the CS met with Salinas and Victor Schroeder. The CS paid Salinas $2800 for two ounces of methamphetamine however, Salinas provided the CS with two bags of methamphetamine, one which contained two ounces and was to be delivered by the CS to Gabriel Cruz and the other one containing three ounces was to be kept and distributed by the CS with the understanding that the CS would pay for the additional ounce of methamphetamine after it was sold. The substances delivered by Salinas to the CS were then submitted to the DEA South Central Lab for analysis. An analyst with that office determined that the substance was in fact methamphetamine weighing 170.7 grams with a purity of 32.5% for a total of 136.1 grams of actual methamphetamine.

On December 9, 2008, while serving arrest warrants based on the indictment of this conspiracy, DEA and other local officers arrested Victor Schroeder at his home. At that time, Schroeder was found to be in possession of a quantity of suspected cocaine. This substance was seized and submitted to the DEA South Central Lab for analysis. An analyst with that office determined that this substance was cocaine HCL, which is a Schedule II controlled substance, weighing 106.8 grams of cocaine.

On that same date, Gabriel Cruz, III was also arrested based on the indictment in this conspiracy and was also found to be in possession of a quantity of two items containing suspected cocaine and a firearm identified as a Smith and Wesson Model SW40E, .40 caliber pistol, bearing serial number PBK1182. This substance was also analyzed by the DEA South Central lab and

was determined to be cocaine HCL weighing 2.6 grams and 72.2 grams.

On that same date, the arrest warrant for Jose Salinas and Perla Montalvo was served at the residence they shared with Jose Salinas in Houston, Texas. The DEA and local officers determined that Jose Salinas had been residing at that residence prior to his arrest the night prior to this. At this location, law enforcement recovered a large amount of cocaine HCL, methamphetamine, black tar heroin and marihuana and three firearms believed to all be involved in the conspiracy to possess with intent to distribute these narcotics. The illegal substances were determined by analysts with the DEA South Central Lab to be cocaine HCL weighing 646.5 grams, methamphetamine weighing 17.5 grams, heroin, which is a Schedule I controlled substance, weighing 92.8 grams and marihuana weighing 20.7 grams. The firearms, which were found in the same location as these narcotics, were identified as a Smith and Wesson, Model SW40E, .40 caliber pistol, bearing serial number PBK1182, a North American Arms, .22 caliber revolver, bearing serial number L070261, and a Smith & Wesson, Model 637-2, .38 caliber revolver, bearing serial number CJS8488.

Co-conspirator, Noe Santos, was one of the suppliers of the methamphetamine and cocaine in this conspiracy to Salinas (son) and Perla Montalvo, who in turn, delivered and sold these drugs to the other co-conspirators who delivered them within the Eastern District of Texas. The total amount of methamphetamine distributed in this conspiracy from on or about October 1, 2006 until December 9, 2008 is approximately 27 kilograms and the total amount of cocaine HCL distributed in this conspiracy is approximately 83 kilograms.

Defendant, Perla Montalvo, agreed with the above-stated facts. Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty. The Defendant agreed with the evidence presented by the Government and personally testified that she was entering her guilty plea knowingly, freely and voluntarily.

## **RECOMMENDED DISPOSITION**

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offense charged in **Count One** of the charging **Information** on file in this criminal proceeding. The Court also recommends that the District Court accept the plea agreement.[2] Accordingly, it is further recommended that, Defendant, Perla Celina Montalvo, be finally adjudged as guilty of the charged offense under Title 21, United States Code, Section 846.

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report. At the plea hearing, the Court admonished the Defendant that

---

[2] "(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

the District Court may reject her plea and that the District Court can decline to sentence Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the presentence report because the sentencing guidelines are advisory in nature. The District Court may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report. *See* FED. R. CRIM. P. 11(c)(3). If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw her guilty plea, dependent upon the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B). If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## **OBJECTIONS**

Objections must be: (1) specific, (2) in writing, and (3) served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 1(a), 6(b), and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its

nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 15th day of April, 2010.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE